IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RADIAN ASSET ASSURANCE, INC.,

       Plaintiff,

vs.                                                                             No. CIV 09-0885 JB/DJS

COLLEGE OF THE CHRISTIAN BROTHERS OF
NEW MEXICO, known as THE COLLEGE OF
SANTA FE; CHRISTIAN BROTHERS OF THE
COLLEGE OF SANTA FE COMMUNITY d/b/a
THE COLLEGE OF SANTA FE, a New Mexico
corporation; DR. MARK LOMBARDI, an individual;
JERRY BRISSON, an individual, and SHARON
BAIN, an individual,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Letter from Clifford K. Atkinson, Douglas A. Baker, and Justin D. Rodriguez of Atkinson, Thal & Baker, P.C. to the Court (dated October 1, 2010), filed October 1, 2010 (Doc. 144)("College's Letter"); (ii) the Letter from Gavin W. Skok of Riddell Williams P.S. to the Court (dated October 5, 2010), filed October 5, 2010 (Doc. 156)("Radian Asset's Letter"); (iii) the Letter from Clifford K. Atkinson, Douglas A. Baker, and Justin D. Rodriguez of Atkinson, Thal & Baker, P.C. to the Court (dated October 6, 2010), filed October 6, 2010 (Doc. 157); and (iv) Letter from Gavin W. Skok of Riddell Williams P.S. to the Court (dated October 6, 2010), filed October 6, 2010 (Doc. 158). The Court held a hearing on October 4, 2010. The primary issues are whether the Court should order Defendant Christian Brothers of the College of New Mexico d/b/a the College of Santa Fe ("College") to produce the 52 tape backups ("CSF ESI") and 135 previously removed hard drives to Plaintiff Radian Asset

Assurance, Inc. ("Radian Asset") subject to an order preserving the College's attorney-client privilege and work-product protections under rule 502(d) of the Federal Rules of Evidence. The Court orders the College to produce the CSF ESI to Radian Asset, subject to a rule 502(d) order, and orders the College to determine which, if any, of the 135 hard drives is the one sought by Radian Asset, and to produce that hard drive.

## PROCEDURAL BACKGROUND

Radian Asset filed its initial Complaint on September 14, 2009. Two days later, the College sold its assets to Laureate Education, Inc. ("Laureate Education"). The CSF ESI and 135 previously removed hard drives were transferred to Laureate Education as part of that sale. Radian Asset served the College with its document request in January 2010, calling for production of both hard copy documents and electronically stored information ("ESI"). The College subpoenaed Laureate Education in early March to recover the transferred materials. In early August 2010, the College obtained certain of its ESI from Laureate Education, including 135 hard drives (6 that the College has reviewed, and 129 that it has not reviewed), 52 backup tapes (backing up the College's electronic mail and document servers -- 26.5 of which the College has restored, 24 remain unrestored, and 1.5 failed beyond repair), and a hard drive containing information taken from Laureate Education's current server.

The parties have repeatedly brought disputes before the Court regarding the ESI. The Court ordered that the College search and produce electronic mail from the tape backups based on certain search terms, custodians, and date ranges. See Memorandum Opinion and Order, filed September 15, 2010 (Doc. 127); Memorandum Opinion and Order, filed September 24, 2010 (Doc. 140); Memorandum Opinion and Order, filed October 2, 2010 (Doc. 148)("MOO"). The Court also

ordered the College to produce 1,219 files Radian Asset identified as being potentially relevant from hard drive containing information taken from Laureate Education's current server.  See MOO at 9. In response to these orders, the College has produced approximately 125,000 pages of ESI.  See College's Letter at 5.

In the course of the parties' disputes about how to proceed with producing the CSF ESI, the College has offered to produce all the CSF ESI to Radian Asset subject to a claw-back agreement. At the October 4, 2010 hearing, the Court proposed ordering the College to produce the CSF ESI, subject to an order under rule 502(d) preserving the College's claims of privilege and of protections for the materials.  At the hearing, the College represented that it was amenable to the order.  On October 5, 2010, Radian Asset sent a letter to the Court objecting to its proposed order, arguing "that the College should be required to search its own ESI and produce discoverable materials -- just as Radian did -- and that the burden and cost of doing so should not be shifted on to Radian."  Radian Asset's Letter at 1.

## **ANALYSIS**

Radian Asset makes five arguments that the College should finish restoring the tape backups and run the search rather than producing that CSF ESI to Radian Asset for processing.  Radian Asset argues that the cost and burden of producing the ESI should not be shifted to Radian Asset because: (i) the College should bear its own cost of production; (ii) the College has not met its burden of showing that producing the CSF ESI would create an undue burden; (iii) producing the CSF ESI violates rule 34(b)(2)(E) of the Federal Rules of Civil Procedure; (iv) producing all the CSF ESI amounts to an impermissible "data dump"; and (v) rule 502 is not a cost-shifting tool.  The Court finds these arguments unavailing.  For the reasons below, and for the reasons stated on the record

at the hearing, the Court will order the College to produce the tape backups subject to a rule 502(d) order preserving the College's claims of privilege. The Court will also order the College to produce user logs for the 135 previously removed hard drives to determine which, if any, belonged to Defendant Jerry Brisson, and to produce Brisson's hard drive.

## I.     THE COLLEGE BEARS ITS OWN COST OF PRODUCTION.

Radian Asset bases many of its arguments on the premise that the Court is shifting discovery cost from the College to Radian Asset. Radian Asset argues that "[t]he College's obligations are plainly its own under case law and should not be shifted." Radian Asset's Letter at 4. The Court, however, is not shifting discovery costs. Each party will bear its own costs. Nor is the Court alleviating the College of its burden to disclose its ESI. The College must produce all of its ESI.

Radian Asset relies on two cases for it arguments against cost-shifting -- one from the Supreme Court of the United States, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978), and another from the United States District Court for the Southern District of New York, Zubulake v. UBS Warburg LLC, 217 F.RD. 309 (S.D.N.Y. 2003). Both of these cases address traditional requests from the parties to shift discovery costs, which is not the issue before the Court.

In Oppenheimer Fund, Inc. v. Sanders, the Supreme Court addressed the question of which party should bear the expense of identifying class members from computer tapes to prepare a class action notification under rule 23(d). In dicta, the court analogized to rule 26(c), stating:

> In this situation, the district court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff. Once again, a rough analogy might usefully be drawn to practice under the discovery rules. Under those rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from "undue burden or expense" in doing so, including orders conditioning discovery on the requesting party's payment of the

costs of discovery.

437 U.S. at 358 (internal citations omitted).

In Zubulake v. UBS Warburg LLC, the district court addressed a plaintiff's discovery request for electronic mail stored on tape backups. See 217 F.R.D. at 311-12. The defendant estimated the cost of searching for the electronic mail transmissions would be $175,000.00, exclusive of attorney fees, for conducting a privilege review. See 217 F.R.D. at 312. The plaintiff sought to compel the defendant to produce the electronic mail at the defendant's expense, and the defendant asked the District Court to shift the cost of its production to the plaintiff. 217 F.R.D. at 312, 317.

The district court in Zubulake v. UBS Warburg LLC reviewed the workings of rule 26(b)(1), 26(b)(2), and 26(c), and quoted Oppenheimer Fund, Inc. v. Sanders for the proposition that district courts have the discretion to condition discovery on the requesting party's payment of discovery costs. See 217 F.R.D. at 316. The district court explained:

> The application of these various discovery rules is particularly complicated where electronic data is sought because otherwise discoverable evidence is often only available from expensive-to-restore backup media. That being so, courts have devised creative solutions for balancing the broad scope of discovery prescribed in Rule 26(b)(1) with the cost-consciousness of Rule 26(b)(2). By and large, the solution has been to consider cost-shifting: forcing the requesting party, rather than the answering party, to bear the cost of discovery.

217 F.R.D. at 316.

Unlike the courts in Oppenheimer Fund, Inc. v. Sanders and Zubulake v. UBS Warburg LLC, the Court does not address a request by one party to shift its discovery costs onto the other party. The Court addresses the question whether it may order that the College produce the CSF ESI without waving its privilege. The College will bear the cost of producing the CSF ESI, and Radian Asset will not be required to pay any of the College's costs. Thus, the cases cited by Radian Asset

are not directly applicable.

The Court realizes that, by ordering the College to turn over the CSF ESI unreviewed, the Court is in effect forcing Radian Asset to bear the cost of that review if it wants certain data. Such a protective order is not, however, a traditional cost-shifting order. When the party producing the data conducts the search, there is also a cost, specifically when there is nothing in the documents that the producing party seeks. There may be problems with the Court's order to produce all of the CSF ESI, but the Court does not believe the argument that the order is a cost-shifting order is fully accurate argument. The Court believes it should address the other problems -- one at a time -- rather than treating the order as a traditional cost-shifting order.

## II.     THE CSF ESI IS NOT REASONABLY ACCESSIBLE, AND SEARCHING IT WOULD IMPOSE AN UNDUE BURDEN ON THE COLLEGE.

The Court finds that searching the CSF ESI would impose an undue burden on the College. It is the Court's duty to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(B) imposes limitations on the scope of discovery, providing that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Rule 26(b)(2)(C) states that courts must limit discovery to prevent undue burdens on parties:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the

issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii).  "The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including . . . specifying terms . . . for the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(B).

In response the Court's MOO, the College reported on the burden of searching the CSF ESI and the previously removed hard droves, which composes over six terabytes of data.  The College represented that it would cost approximately $8,700.00 to search the user logs of the remaining 129 hard drives, $290,350.08 to search the 26.5 restored tape backups using the same terms and custodians as the College used to search the electronic mail, and an additional $129,964.80 to restore and search the remaining twenty-four tape backups.  See College's Letter at 1-4.  These costs do not include conducting a privilege review on the materials in the search results.  See College's Letter at 4.  The College argued that, given these costs, the CSF ESI is not reasonably accessible, and restoring, searching, and producing the CSF ESI would constitute an undue burden and expense on the College.  See College's Letter at 4.

In regard to the 135 hard drives, Radian Asset primarily hopes to establish which belonged to Brisson.  Radian Asset argues that, for the 135 hard drives, the College need only "plug each into a computer to identify its last user."  Radian Asset's Letter at 6.  In accordance with the Court's Memorandum Opinion and Order, filed September 24, 2010 (Doc. 140), the College has already examined the six hard drives most likely to have been Brisson's, but those efforts proved unavailing. Because the College's inability to identify which of the hard drives belonged to Brisson results from its handling of the hard drives, and because the $8,700.00 cost of reviewing the hard drives is relatively modest in comparison to the litigation costs in this case, the Court will order the College

to produce user logs of the 135 hard drives to identify which, if any, belonged to Brisson. Upon locating Brisson's hard drive ("Brisson's Data"), the Court orders the College to produce it to Radian Asset subject to a rule 502(d) order.[1]

Regarding the tape backups, Radian Asset argues that "the documents are in fact readily accessible." Radian Asset's Letter at 6. It contends that "[t]he sole fact that electronic records exist in large quantities cannot be sufficient to make them 'not reasonably accessible.'" Radian Asset's Letter at 6.[2] Radian Asset further argues that, because much of the data on the tape backups is redundant, the College has overstated its search costs. See Radian Asset's Letter at 7.

The Court agrees that the information on the tape backups is not reasonably accessible and searching the tapes would create an undue burden. In Zubulake v. UBS Warburg LLC, the court found that tape backups are generally inaccessible. See 217 F.R.D. at 323 ("A court should consider cost-shifting only when electronic data is relatively inaccessible, such as in backup tapes."). Radian

---

[1] If Radian Asset requests additional searches on the hard drives, however, the Court will order that all 135 hard drives be produced in the same manner as the tape backups in accordance with this order.

[2] Radian Asset also advances arguments against cost-shifting, but, as explained above, the Court is not engaging in cost-shifting; Radian Asset will pay none of the College's costs. Radian Asset argues, however, that to move the Court to shift costs, the College "would need to corroborate its contentions with affidavits or declarations from information technology specialist to [sic] that would thoroughly describe the limitations that render its backup tapes 'not reasonable accessible' by virtue of costs." Radian Asset's Letter at 6 (citing Peskoff v. Faber, Civ. A. No. 04-526 (HHK/JMF), 2007 WL 530096, at *4 (D.D.C. Feb. 21, 2006); Thompson v. U.S. Dept. of Housing and Urban Devel., 219 F.R.D. 93, 98 (D. McDougald. 2003)("Conclusory or factually unsupported assertions by counsel that the discovery of electronic material should be denied because of burden or expense can be expected to fail.")). In Zubulake v. UBS Warburg LLC, however, the District Court found that tape backups are generally inaccessible, see 217 F.R.D. at 323, and this Court finds that the College's has produced an adequate "particularization of the facts to support [its] challenge to discovery of electronic records," Thompson v. U.S. Dept. of Housing and Urban Devel., 219 F.R.D. at 98. The Court will, however, require the College to produce affidavits or declarations supporting its representations regarding the cost of restoring and searching the tape backups.

Asset concedes that the data on the tape backups are "largely non-responsive ESI." Radian Asset's Letter at 5. The College has already produced approximately 125,00 pages of materials from the tape backups based on searches of electronic mail and attachments thereto, which may contain copies of whatever files are elsewhere on the tape backups.

In the context of cost-shifting, courts have held that the cost of producing data weighed against the likely relevance of the data determines whether cost-shifting is appropriate.

> The more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that the [responding party] search at its own expense. The less likely it is, the more unjust it would be to make the [responding party] search at its own expense.

McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001). In Zubulake v. UBS Warburg LLC, the district court asserted that "[t]he extent to which the request is specifically tailored to discover relevant information" and "[t]he availability of such information from other sources" are the factors that courts should weigh most heavily in performing a cost-shifting analysis. 217 F.R.D. at 322. Consequently, the Court finds that there is good cause to enter a protective order under rule 26(c)(1), because the significant expense involved in restoring and searching the tape backups in light of their largely irrelevant content makes the burden and expense of searching the tape backups outweigh its likely benefit.

### III.    PRODUCING THE TAPE BACKUPS DOES NOT VIOLATE RULE 34(b)(2)(E).

Radian Asset also argues that the "College cannot produce its ESI as it is kept in the ordinary course of business," as rule 34(b)(2)(E) requires. Radian Asset's Letter at 4. Rule 34(b)(2)(E) provides:

> (E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

>> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).

First, the Court is unconvinced by Radian Asset's argument that, because the College transferred the CSF ESI to Laureate Education before subpoenaing it back, the College cannot produce their records in the "same way in which they were maintained before it transferred them."[3] Radian Asset's Letter at 1. Radian Asset does not explain how the transfer of data would have changed how it was stored. Radian Asset does not appear to argue that the CSF ESI was recorded to tape backups, or that the College destroyed more accessible forms of the CSF ESI, after Radian Asset initiated this suit. Radian Asset has produced no evidence that the data was not maintained on tape backups before the sale and transfer, but merely suggests that the transfer somehow transformed the way the data was stored. See Radian Asset's Letter at 4 ("[T]he College cannot produce its ESI as it is kept in the ordinary course of business because it transferred that information away to Laureate Education and lost the ability to make such a production."). Merely transferring

---

[3] Radian Asset's arguments have more force with regard to the 135 previously removed hard drives. The College apparently chose to pull the hard drives out without labeling or recording their source. The record does not reveal when this removal took place. If done in conjunction with the transfer, the hard drives may not have been kept in normal course of business. Because the Court orders the College to produce user logs to locate Brisson's hard drive, it excepts the hard drives from its further analysis.

material between parties, however, does not necessarily alter how it was "kept."[4]

Tape backups are a standard method of storing archival data for businesses. See Zubulake v. UBS Warburg LLC, 217 F.R.D. at 316 ("[D]iscoverable evidence is often only available from expensive-to-restore backup media."). Businesses commonly store data in increasingly less accessible formats as the data loses currency, and the data is retained primarily for archival purposes. It is common to move data from on-line storage, where it is quickly accessible through networks, to near-line storage -- robotic storage devices -- where data can be retrieved after a short delay, and eventually to offline or archival storage, such as tape backups. See Zubulake v. UBS Warburg LLC, 217 F.R.D. at 318-19. Thus, the fact that the CSF ESI is stored, in part, on tape back ups does not, without more, suggest that the ESI is not in the same state as it was "kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E).[5]

Second, rule 34(b)(2)(E) is a default rule, which is expressly inapplicable in the context of a court order; it is irrelevant as to what this Court may order. The Advisory Committee's Notes make clear that, where, as here, the parties "cannot agree and the court resolves the dispute, the court is not limited to the forms initially chosen by the requesting party, stated by the responding party, or specified in this rule for situations in which there is no court order or party agreement." Fed. R. Civ. P. 34 advisory committee's note. Consequently, even if the CSF ESI was not kept on tape backups in the course of business, the Court may order that the tapes be produced.

---

[4] In the context of a box of files, transferring the box between parties would not alter how the files were kept, so long as the files were not altered in the process. Similarly, with ESI, merely moving a tape between parties need not alter how it is kept.

[5] The Court will require that the College produce affidavits or declarations stating that the data was kept on tape backups in the usual course of business.

**IV.     THE PRODUCTION OF THE TAPE BACKUPS IS NOT ANALOGOUS TO AN UNDIFFERENTIATED DOCUMENT DUMP.**

Radian Asset argues that "the College wants to simply dump all of its ESI on Radian," and that "[n]othing in the federal rules authorizes a party to dump the entirety of its ESI on the requesting party and force the requester to sort through it all for responsive information." Radian Asset Letter at 5. For authority that a document dump is not permissible, Radian Asset cites ReedHycalog UK, Ltd v. United Diamond Drilling Services, Inc., 2008 U.S. Dist. LEXIS 93177 (E.D. Tex. 2008). In that case, the United States District Court for the Eastern District of Texas addressed a production of 750 gigabytes of data by the defendants, where the defendants "reviewed the production and removed privileged documents and designated documents under the Protective Order as 'confidential' or 'attorneys' eyes only[,]' [but] [t]here was no effort to review or limit the production to information potentially relevant to the case." 2008 U.S. Dist. LEXIS 93177, at *5. The district court was concerned that the defendants were "burying relevant documents amid a sea of irrelevant ones":

> Thus, a producing party may not bury those relevant documents in the hope that opposing counsel will overlook the proverbial 'smoking gun' as he wades through an ocean of production. [The defendants] appear to be so motivated and have engaged in such gamesmanship, as they reviewed their respective productions to remove privileged documents and designate documents as 'confidential' or 'attorneys' eyes only' but made no effort to narrow their production to information that may be relevant in this case. [The defendants'] production practices amount to a data dump with an instruction to 'go fish.' That this fishing is done electronically is of no consequence.

Id. at *9.

The facts before the Court are not analogous. The College is not seeking to dump non-privileged materials on Radian Asset after completing a privilege review. Rather, the College is seeking to produce all of the CSF ESI, in part, to avoid the expense of conducting a privilege review.

Radian Asset argues that the College seeks to "dump terabytes of undifferentiated, unorganized, and largely non-responsive ESI on [Radian Asset] and say 'go fish.'" The central question, however, is whether the tape backups will be restored and searched before or after they are produced. "Radian requested that the College begin to search and produce electronic documents within the same narrowed categories" used for searching electronic mail. Letter from Gavin W. Skok of Riddell Williams P.S. to the Court (dated September 23, 2010), filed September 23, 2010 (Doc. 136). Consequently, Radian Asset does not seek to use the College's superior knowledge of the documents to produce a more refined search -- it only seeks to have the College perform a search that Radian Asset is equally competent to perform. Thus, ordering the College to produce the CSF ESI will not result in a document dump that hides "the proverbial 'smoking gun'" in "an ocean of production." ReedHycalog UK, Ltd v. United Diamond Drilling Services, Inc., 2008 U.S. Dist. LEXIS 93177, at *9.

## V.     RULE 502 IS NOT A COST-SHIFTING TOOL.

Radian Asset argues, and the Court agrees, that rule 502 is not a cost-shifting tool. The Court does not rely on rule 502 for its authority to order the College to produce the CSF ESI. Rule 502 gives the Court the authority to preserve the College's privilege for the CSF ESI despite its production. Rule 502(d) provides: "Controlling effect of a court order. -- A Federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court -- in which event the disclosure is also not a waiver in any other Federal or State proceeding." Fed. R. Evid. 502(d). The Advisory Committee Notes to the rule make clear that rule 502(d) was meant to apply in circumstances like those before the Court:

> Subdivision (d). <u>Confidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving</u>

-13-

> electronic discovery. But the utility of a confidentiality order in reducing discovery costs is substantially diminished if it provides no protection outside the particular litigation in which the order is entered. Parties are unlikely to be able to reduce the costs of pre-production review for privilege and work product if the consequence of disclosure is that the communications or information could be used by non-parties to the litigation.
>
> There is some dispute on whether a confidentiality order entered in one case is enforceable in other proceedings. See generally Hopson v. City of Baltimore, 232 F.R.D. 228 (D. McDougald. 2005), for a discussion of this case law. The rule provides that when a confidentiality order governing the consequences of disclosure in that case is entered in a federal proceeding, its terms are enforceable against non-parties in any federal or state proceeding. <u>For example, the court order may provide for return of documents without waiver irrespective of the care taken by the disclosing party</u>; the rule contemplates enforcement of "claw-back" and "quick peek" arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product. See Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) (noting that parties may enter into "so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privilege documents"). The rule provides a party with a predictable protection from a court order -- predictability that is needed to allow the party to plan in advance to limit the prohibitive costs of privilege and work product review and retention.
>
> <u>Under the rule, a confidentiality order is enforceable whether or not it memorializes an agreement among the parties to the litigation. Party agreement should not be a condition of enforceability of a federal court's order.</u>
>
> <u>Under subdivision (d), a federal court may order that disclosure of privileged or protected information "in connection with" a federal proceeding does not result in waiver.</u> But subdivision (d) does not allow the federal court to enter an order determining the waiver effects of a separate disclosure of the same information in other proceedings, state or federal. If a disclosure has been made in a state proceeding (and is not the subject of a state-court order on waiver), then subdivision (d) is inapplicable. Subdivision (c) would govern the federal court's determination whether the state-court disclosure waived the privilege or protection in the federal proceeding.

Fed. R. Evid. 502 advisory committee's note (emphasis added). Thus, the Court does not rely on rule 502 for its authority to order the College to produce the CSF ESI, but to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court."

Fed. R. Evid. 502.

**IT IS ORDERED**, upon submission of affidavits or declarations by the College asserting that the CSF ESI was kept on tape backups in the usual course of business and supporting their representations regarding the costs of restoring and searching the tape backups, that: (i) Defendant Christian Brothers of the College of New Mexico d/b/a the College of Santa Fe shall provide copies to Plaintiff Radian Asset Assurance, Inc., without reservation or qualification, all of the CSF ESI from the tape backups on a rolling basis, beginning no later than ten days after the entry of this order and completing all production within twenty days, and to the extent that CSF has already restored or produced indexes of any of the CSF ESI, including but not limited to the 26.5 backup tapes that CSF has already restored, see College's Letter at 3, the College shall provide copies of the restored data to Radian Asset to avoid the need for Radian Asset to incur the expense and burden of restoring that data; (ii) the College shall produce user logs of the 135 previously removed hard drives to attempt to identify Brisson's hard drive, and, upon locating it, the College shall produce a copy of Brisson's Data, without reservation or qualification, within ten days of the entry of this order; (iii) pursuant to rule 502(d) of the Federal Rules of Evidence, the Court orders that the disclosure by the College to Radian Asset of the CSF ESI and Brisson's Data is and shall be made without waiver of any attorney-client privilege or work-product protection (collectively referred to herein for convenience as "privilege"); (iv) the College's production to Radian Asset of the CSF ESI or Brisson's Data that is or may be subject to an assertion of privilege, shall be deemed to be without prejudice to any assertion that such material is privileged, and such production shall not be deemed to waive the College's assertion of privilege, or estop the College from designating the information or document as privileged at a later date; (v) if the College reasonably believes or comes to

reasonably believe that any information in the CSF ESI or Brisson's Data is subject to attorney-client privilege or work-product protection, it shall notify Radian Asset pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) and the procedures of that rule shall govern; (vi) if Radian Asset in the course of reviewing the CSF ESI or Brisson's Data reviews any document that reasonably appears to be subject to attorney-client privilege, Radian Asset shall either notify the College of the potentially privileged material or bring the issue to the Court for resolution; in either case, the burden of establishing privilege shall remain on the College, and in no case shall Radian Asset have any obligation or burden to review the CSF ESI or Brisson's Data for the purpose of locating potentially privileged documents, and the burden of conducting any such review and notifying Radian Asset of such claims shall remain on the College at all times; (vii) the production of the CSF ESI and Brisson's Data to Radian Asset is without prejudice to Radian Asset's ability or right to move the Court for sanctions or other remedies related to the CSF ESI, Brisson's Data, or the College's actions with respect to the CSF ESI or Brisson's Data, and neither this Memorandum Opinion and Order nor the production of the CSF ESI or Brisson's Data shall be deemed an indication, finding, or conclusion that the College has produced all discoverable documents or ESI, or that the College has properly preserved all discoverable evidence; (viii) this Order does not affect or change any of the parties' rights or obligations under the previously filed Revised Stipulated Protective Order, filed April 28, 2010 (Doc. 60); and (ix) this Order shall be governed by Federal Rule of Evidence 502(d), and is entered pursuant to Federal Rule of Civil Procedure 26(c)(1).

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel J. O'Friel
Pierre Levy
Aimee Sue Bevan
O'Friel and Levy
Santa Fe, New Mexico

-- and --

Jeffrey R. Brannen
Jeffrey R. Brannen, P.A.
Santa Fe, New Mexico

-- and --

Gavin W. Skok
John D. Lowery
Riddell Williams, P.S.
Seattle, Washington

    *Attorneys for the Plaintiff*

Clifford K. Atkinson
Douglas A. Baker
Justin Duke Rodriguez
Atkinson, Thal & Baker, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant College of the Christian Brothers of New Mexico and
       Christian Brothers of the College of Santa Fe*

W. Spencer Reid
Benjamin F. Feuchter
Keleher & McLeod, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Sharon Bain*

Joe L. McClaugherty
Tamara R. Safarik
McClaugherty & Silver, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendant Jerry Brisson*

Michael W. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendant Mark Lombardi*