# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RADIAN ASSET ASSURANCE, INC.,

      Plaintiff,

vs.                                         No. CIV 09-0885 JB/DJS

COLLEGE OF THE CHRISTIAN BROTHERS OF
NEW MEXICO, known as THE COLLEGE OF
SANTA FE; CHRISTIAN BROTHERS OF THE
COLLEGE OF SANTA FE COMMUNITY d/b/a
THE COLLEGE OF SANTA FE, a New Mexico
corporation; DR. MARK LOMBARDI, an individual;
JERRY BRISSON, an individual, and SHARON
BAIN, an individual,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant College of Santa Fe's First

Motion to Compel Plaintiff Radian Asset Assurance, Inc. to Provide Good Faith and Complete

Responses to College of Santa Fe's August 18, 2010 Interrogatories, Requests for Admission, and

Requests for Production, and Request for Other Relief, and Memorandum Brief in Support Thereof,

filed September 23, 2010 (Doc. 137)("Motion to Compel"). The Court held hearings on this motion

on September 24, 2010 and on October 4, 2010. The primary issues are: (i) whether the Court

should compel Plaintiff Radian Asset Assurance, Inc. ("Radian Asset") to amend its answers to

Defendant Christian Brothers of the College of New Mexico d/b/a the College of Santa Fe's

Interrogatory Nos. 1-6 and 9-21; (ii) whether the Court should require Radian Asset to amend its

response to CSF's Requests for Admission Nos. 14-16, 18, and 21.; and (iv) whether the Court

should require Radian Asset to amend its response to CSF's Requests for Production. The Court

will grant in part and deny in part CSF's Motion to Compel.

## FACTUAL BACKGROUND

Radian Asset began dealing with CSF in approximately the spring of 2006 concerning Radian Asset issuing CSF (i) an insurance policy guaranteeing that Radian Asset would pay principal and interest payments owed on $25,000,000.00 of City of Santa Fe, New Mexico Educational Facilities Refunding and Improvement Revenue Bonds if CSF defaulted on its obligation to pay such amounts when due ("Bond insurance"); and (ii) an insurance policy guaranteeing that Radian Asset would pay certain obligations of CSF under the terms of an interest rate exchange agreement between CSF and Royal Bank of Canada if CSF defaulted on its obligation to pay such obligations when due ("Swap insurance"). Radian Asset knew that CSF was not a strong nor a financially sophisticated institution, that CSF's Standard & Poor's rating was only a BBB-, and that Radian Asset's insurance was being offered only to strengthen the otherwise less attractive market appeal that the Bonds would have. It is also undisputed that Radian Asset is a sophisticated educational institution insurer, that Radian Asset knew how to evaluate colleges financially, and that CSF had never had its prior bond transactions insured. Radian Asset, who at the time was part of a five-billion dollar company -- Radian Group, Inc. -- was in the business of selling bond insurance to bond issuers and obligors who were less financially sound than others.

Radian Asset held itself out to CSF and to the market as highly sophisticated in the financial analysis and evaluation of institutions such as CSF, including other colleges and universities. Radian Asset alleges: "[I]ndustry standard practice is for bond insurers to insure only those bonds that the bond insurer concludes are not at risk of defaulting." First Amended Complaint ¶ 4.13, at 10, filed October 8, 2009 (Doc. 12)("FAC"). Nevertheless, Radian Asset maintains: "In fact, and

unknown to Radian, the College was not financially sound at the time and it was not likely that the College would be able to make all required payments on the Bonds." FAC ¶ 1.3, at 2. CSF maintains that it was relying upon Radian Asset to ask for what Radian Asset wanted. CSF contends that Radian Asset had the duty in 2006 to exercise due diligence in its evaluation of CSF's financial condition, historically, currently, and prospectively, and that Radian Asset either failed to perform that due diligence or chose not to perform that due diligence in whole or in part, did not make inquiries for information that it now says was material to its decision making, chose to go forward on the basis of the information it had with its eyes wide open, and that Radian Asset could not, and did not, reasonably and materially or solely rely on the information CSF provided in response to Radian's inquiries. See Defendant's Answer to Plaintiff's First Amended Complaint, at 15th, 16th, 21st Affirmative Defenses at 38-39, filed March 3, 2010 (Doc. 41).

On April 24, 2006, there was apparently a telephone conference in which Radian Asset received information from CSF. According to Radian Asset, the purpose of the telephone conference "was to discuss matters material to Radian's decision whether to insure the Bonds and the Swap." FAC ¶ 4.21, at 11. Radian Asset states that the Defendants and RBC provided information "material to Radian's decision whether to insure the Bonds" to persuade Radian Asset that the College could meet all debt service obligations" when in fact the failure to disclose "the College's financial condition in fact made it substantially unlikely that the College could repay the Bonds or meet its obligations under the Swap." FAC ¶ 4.21, at 11. See id. ¶ 4.27, at 14-15 (citing to the Bond Insurance Commitment Letter). Radian Asset maintains that the disclosures failed to warn "that the College's current condition made it unlikely that the College would be able to repay all principal and interest on the Bonds or meet its payment obligations." FAC ¶ 4.35, at 12. Radian

Asset maintains that "Radian would not have issued its Policies if it had been aware of . . . material facts bearing on the likelihood that the College would pay its debt service obligations on the Bonds and its payment obligations."  FAC ¶ 4.65, at 29.

Radian Asset issued the first commitment letter on May 24 or 26, 2006.  It issued the policies on September 21, 2006.  CSF's financial condition deteriorated, and CSF ceased operations in May 2009 at the end of its spring semester.  The Bonds are currently in default.

## PROCEDURAL BACKGROUND

Radian Asset filed its original Complaint against CSF and the other Defendants on September 14, 2009, see Doc. 1, and its FAC on October 8, 2009, see Doc. 12.  The FAC alleges Radian Asset's "Fourth Claim for Relief: Negligent Misrepresentation (Against All Defendants)."  FAC at 37.  Radian Asset alleges that this claim is based on the Defendants' "duty to disclose or cause to be fully and accurately disclosed to Radian . . . material facts," FAC ¶ 8.2, at 37, and that the Defendants breached their duties by "negligently making the misrepresentations of, and failures to disclose, material facts," FAC ¶ 8.3, at 37.  Radian Asset further alleges that the Defendants knew Radian Asset "would rely on their representations and omissions."  FAC ¶ 8.4, at 37.  Radian Asset's FAC characterizes the claim for misrepresentation as consisting both of misrepresentations, failures to disclose, and omissions.  See FAC ¶¶ 8.3-8.4, at 37.

Radian Asset has provided substantial information in timely responses to numerous interrogatories, requests for admission, and document requests from CSF.  To date, Radian Asset has produced over 61,000 pages of documents.  Radian Asset made the vast majority of that production before former defense counsel's withdrawal and had at that time satisfied the demands of the CSF's then-attorneys.  Radian Asset contends that CSF's new counsel are now re-opening

-4-

discovery issues that it understood had been resolved months ago and are aggressively pushing for additional discovery.

1.   **CSF's Interrogatories, Requests for Admission, and Requests for Production of Documents.**

On August 18, 2010, CSF served its First Set of Interrogatories and Requests for Admission, and its Fourth Requests for Production of Documents on Radian Asset. CSF's discovery included twenty-one separate interrogatories, each with multiple subparts; twenty-one requests for admission; and twenty-six requests for the production of documents. See Declaration of Gavin Skok in Support of Radian Asset Assurance Inc.'s Opposition to College's Motion to Compel ¶ 2, at 1, filed October 1, 2010 (Doc. 146).

Radian Asset requested, as a professional courtesy, a three-week extension to object and to respond. Radian Asset states that it requested the extension because of the breadth of the discovery requests. When Radian Asset requested the extension as a professional courtesy, it did not disclose to CSF that it was going to object to more than half of the twenty-one interrogatories as in excess of the permitted number. CSF declined to grant the extension as requested, demanding instead that Radian Asset respond to all of the requests for admission, respond to many of the document requests, and serve all objections within thirty days of service, with any remaining responses to follow within fourteen days. CSF maintains that it thereby foiled Radian Asset's allegedly deceptive plan of delay by an agreed-to extension when CSF responded that it would provide a two-week extension for substantive answers to the Interrogatories and concomitant Requests for Production, but would ask that any objections be raised within thirty days so that there would be no delay in getting any objection issues before the Court. Radian Asset states that CSF's proposal was of little practical value, because it required Radian Asset to complete the majority of its work with thirty days

anyway.

Accordingly, after it had unsuccessfully requested the extension, Radian Asset, through what it contends was substantial effort, provided responses to all of CSF's discovery requests within thirty days of service.  <u>See</u> Skok Decl. ¶ 2, at 1-2.  Radian Asset served and provided its objections and responses to CSF's discovery on September 17, 2010.  <u>See</u> Plaintiff's Certificate of Service, filed September 17, 2010 (Doc. 128); Plaintiff's Certificate of Service, filed September 17, 2010 (Doc. 129).  Radian Asset objected to every Interrogatory.  It also responded to ten Interrogatories "without waiving" its objections and refused to answer eleven Interrogatories.

### a.  <u>Interrogatory Nos. 1 and 2.</u>

In Interrogatory Nos. 1 and 2, CSF require Radian Asset to state all facts concerning the "misrepresentations" that are the subject of the FAC.  Interrogatory No. 1 focuses on the time period before Radian Asset issued its first commitment letter to CSF on May 24 or 26, 2006.  Interrogatory No. 1 states:

> Please state all facts separately and in detail as to what each material misrepresentation was that you contend any defendant made to Radian before Radian issued its commitment letter to issue the policies including without limitation, *e.g.*, the identity of the persons making the alleged misrepresentation(s), the date or dates when the alleged misrepresentations was made, the identity of every person (on behalf of Radian) who heard, read or relied on the alleged misrepresentation, and the identity of any documents pertaining, relating, or referring to such alleged material misrepresentation.

Plaintiff's Objections and Responses to Defendant College of the Christian Brothers of New Mexico Known as the College of Santa Fe's First Interrogatories and First Requests for Admission to Plaintiff No. 1, at 5, filed September 23, 2010 (Doc. 137-1)("Responses").  CSF provides assistance to Radian Asset in responding to the requirement that it "state all facts separately and in detail as to what each material misrepresentation was that you contend was made to Radian by any

Defendant" by stating that the answer should include,

> without limitation, e.g., the identity of the persons making the alleged misrepresentation(s), the date or dates when the alleged misrepresentation was made, the identity of every person (on behalf of Radian) who heard, read or relied on the alleged misrepresentation, and the identity of any documents pertaining, relating, or referring to such alleged material misrepresentation.

Responses No. 1, at 5.   Interrogatory No. 2 is largely identical to Interrogatory No. 1 except that Interrogatory No. 2 applies to the period after the issuance of the commitment letter.  See Responses No. 1, at 5.  Interrogatory No. 2 focuses on the time period between the May 2006 commitment letter issuance and the September 21, 2006 date of issuance of the insurance policies.

In response to Interrogatory Nos. 1 and 2, Radian Asset stated: "In addition, Radian understands this interrogatory to be inquiring solely about material misrepresentations, and not to include material omissions, which are a separate type of claims that were pled separately in Radian's complaints.  Accordingly, Radian's answer is limited to material misrepresentations, as asked." Responses Nos. 1, 2, at 5, 11.  Also, in response to Interrogatory No. 1, Radian Asset refered CSF to approximately 30,000 pages of documents by Bates number.  See Responses No. 1, at 10.

**b.      Interrogatory Nos. 3 and 4.**

CSF issued Interrogatory Nos. 3 and 4, requiring Radian Asset to disclose "all due diligence efforts" in which Radian Asset engaged to determine CSF's relevant financial status.  Interrogatory No. 3 focuses on the time period up to May 24 or 26, 2006 -- the date of the issuance of the first commitment letter.  Interrogatory No. 3 states:

> Please state all facts concerning all due diligence efforts that Radian engaged in to determine the financial status of the College of Santa Fe at the time preceding the commitment letter to satisfy Radian that College of Santa Fe Bonds and Swap are and were risks Radian was willing to insure, including without limitation, e.g., a complete description of those efforts, comparisons you made of any prior years' projections as to fiscal year end results to audit results, all your review of cash flow,

-7-

and Radian's attempt to determine whether the effect of the earliest [sic] retirement program had been included in the projections, the identity of each person who engaged in the due diligence, what each such person did, and the identity by Bates number or otherwise of each document that pertains, refers to, or relates to such due diligence and your answer.

Responses No. 3, at 15-16.  No. 4 makes the same inquiry as Interrogatory No. 3, except it focuses on the period between the issuance of the commitment letter and the issuance date of the policies. In response, Radian Asset named the analysts who worked on the transaction and asserted its analysts "reviewed all financial and other information provided to it by the College," reviewed publically available information, held a telephone conference and site visit, and requested follow-up information.  Responses No. 3, at 16.

c.   <b><u>Interrogatory Nos. 11 through 21</u></b>.

Radian Asset refused to answer Interrogatory Nos. 11 through 21, contending that they are in excess of the limit of fifty interrogatories, because Radian Asset chose to count the guidance section of the Interrogatory Nos. 1-10 as subparts that comprise separate interrogatories.

d.   <b><u>Interrogatory Nos. 13 and 14</u></b>.

The language regarding whether CSF was unlikely to make "all required payments" forms part of both Interrogatory Nos. 13 and 14.  Interrogatory No. 13 states:

Please explain in complete detail each fact that indicates that the FY2006 actual financial results of the College of Santa Fe (as opposed to any budget or projection) made the College of Santa Fe "unlikely to make all required payments," and for each fact please identify each witness with knowledge of such fact, and the identity of each document that relates or pertains to such (by Bates numbers or otherwise if there is no Bates number).

Responses No. 13, at 31.

Interrogatory No. 14 inquires as to the basis for Radian Asset's opinion or judgment that CSF "was financially sound and likely to be able to meet all required payments on the Bonds."

-8-

Responses No. 14, at 32.  Interrogatory No. 14 requires Radian Asset to disclose "each fact and/or factor upon which Radian Asset based its own opinion and/or judgment" concerning CSF's financial soundness, stating:

> Please state separately, specifically and in detail each fact and/or factor upon which Radian based its own opinion and/or judgment after its due diligence and independent analysis of all financial information from the College of Santa Fe that the College of Santa Fe was financially sound and likely to be able to meet all required payments on the bonds, and as to each such fact and/or factor please identify each person who has knowledge of such fact or factor and identify each document which pertains to such fact or factor.

Responses No. 14, at 32.  This inquiry seeks information about allegations in the FAC.  See, e.g., FAC ¶ 1.3, at 2; id. ¶ 4.13, at 10; id. ¶ 4.21, at 11-12; id. ¶ 4.27, at 14-15; id. ¶ 4.35, at 17; id. ¶ 4.65, at 29.

In its answer to Interrogatory No. 13, Radian Asset objected that the language "unlikely to make all required payments" is vague and ambiguous, and Radian Asset refused to answer Interrogatory No. 14.

## 2.   CSF's Seeks Full and Complete Responses.

Four days after Radian Asset served its discovery responses, CSF sent a lengthy letter to Radian Asset, attacking almost all of Radian Asset's discovery responses and accusing Radian Asset of being "evasive," of "not acting in good faith," and of engaging in "deceitfulness."  Letter from Doug Baker to Gavin Skok and John D. Lowery at 1-2 (dated September 21, 2010), filed September 23 2010 (Doc. 137-3)("Mr. Baker's Letter").  On September 21, 2010, CSF served Radian Asset its good-faith request that Radian Asset stipulate to an order requiring Radian Asset to provide good-faith and complete responses to the discovery requests.  The letter from CSF's counsel to Radian Asset's counsel point by point notifies Radian Asset of the alleged deficiencies in its responses, and

requests that Radian Asset concur in an order requiring full and complete responses.

CSF also demands that Radian Asset provide information for every institution it evaluated between 2002-2007 to determine whether to insure its bonds, including Radian Asset's reports of its assessments and recommendations, and all reasons for declining to insure any such bonds or swap.  See Mr. Baker's Letter at 6.  Radian Asset explained in its original responses to CSF's discovery -- at Interrogatory No. 11 -- that Radian Asset insured over one-hundred higher education credits during the time of 2002-2007 and declined to insure many others.  CSF did not offer or seek to meet and confer with Radian Asset, instead demanding only that Radian Asset state by noon the following day whether it agreed to CSF's proposed order compelling Radian Asset to provide all of the information that CSF demanded in its letter.

As to Interrogatory Nos. 1 and 2, CSF represents that its counsel has endeavored to electronically review the documents comprising the approximately 30,000 pages to which Radian Asset refers in its answer, and advises the Court that, from what its counsel can tell, very few of these documents identify the "who, what, when, where and why" that CSF requested Radian Asset to provide.  CSF notified Radian Asset that it would make the argument to the Court that Radian Asset had pled in the Fourth Claim that the actionable "misrepresentation" for which it seeks relief includes misrepresentations, failures to disclose, and omissions, and that Radian Asset's interpretation of Interrogatory Nos. 1 and 2 to refer to only misrepresentations was "interposed solely to evade the discovery process."  Mr. Baker's Letter at 2.  In an attempt to make the Radian Asset's Responses usable at trial or in motion practice, CSF, in its September 21, 2010 letter, attempted to identify in Exhibits A and B to the letter the alleged misrepresentations and misleading statements that it understands Radian Asset is trying to list in its answers.  Exhibit A reflects the

Interrogatory No. 1 misrepresentations, and Exhibit B relates to Interrogatory No. 2 misrepresentations.  See Mr. Baker's Letter at 7-10.  CSF requested of Radian Asset that, "[i]f these lists are not complete and Radian believes it has stated other alleged misrepresentations somewhere in its responses, Radian Asset should set forth the specific representations in the fashion that is responsive to the Interrogatories in its complete Answer to the Interrogatories."  Mr. Baker's Letter at 2-3.

On September 22, 2010, Radian Asset's counsel responded by addressing various issues that CSF's letter raised, agreeing to provide certain additional information and supplementation, providing additional information regarding documents and interrogatory answers, and stating its willingness to meet and confer regarding the discovery requests.  See Letter from Gavin Skok to Douglas Baker and Clifford Atkinson at 2-5 (dated September 22, 2010), filed September 23, 2010, 2010 (Doc. 137-4)("Mr. Skok's Letter").  For example, Radian Asset offered to supplement its response to Interrogatory No. 9 to provide additional information regarding verbal communications between Radian Asset's litigation counsel and RBC.  See Mr. Skok's Letter at 4-5.  Radian Asset rejects CSF's position that the responses are nonresponsive and inadequate, and with very few exceptions refuses to supplement its responses.  The September 22, 2010 letter from Radian Asset in response point by point rejects the contention that Radian Asset's responses are deficient, and offers -- with perhaps one or two exceptions -- no supplementation.

As to Interrogatory No. 1, Radian Asset's September 22, 2010 response stands by its objection, but then states: "[T]here is an easy solution: Radian listed omissions in its Answer to Interrogatory No. 10." Mr. Skok's Letter at 4.  By this response in its September 22, 2010 letter, Radian Asset told CSF that, as a practical matter, there is no prejudice to CSF, because Radian

Asset's response to Interrogatory No. 10 allegedly listed the omissions.  Interrogatory No. 10 is directed to Radian Asset's securities claims.  Radian Asset, on September 22, 2010, refused to confirm the accuracy of Exhibits A and B.  See Mr. Skok's Letter at 3-4.  In response to CSF's complaint about these deficiencies, Radian Asset maintained that the answers are not deficient.  See Mr. Skok's Letter at 3.

CSF did not respond to Radian Asset's letter, or attempt to meet and to confer to resolve any remaining issues.  Instead, it filed the Motion to Compel.  CSF moves the Court, pursuant to rule 37 of the Federal Rules of Civil Procedure and D.N.M.LR-Civ. 7, to enter an order compelling Radian Asset to provide good-faith and complete responses to the Interrogatories, Requests for Production, and Request for Admission that CSF propounded on August 18, 2010, which are the subject of CSF's Motion to Compel.  Pursuant to D.N.M.LR-Civ. 7.3, CSF combined the motion and brief.  Pursuant to rule 37 and D.N.M. LR-Civ. 7, CSF certifies that it has in good faith attempted to confer with Radian Asset and to obtain its concurrence, and has determined that further efforts are unlikely to be productive and that Radian Asset opposes this motion.

On September 24, 2010, the Court held a status conference.  Radian Asset did not waive its right to file a written response to CSF's Motion to Compel, but sought the Court's guidance on how the parties should proceed in resolving their disputes.  The Court gave the parties guidance.

On October 1, 2010, Radian Asset filed the Plaintiff Radian Asset Assurance Inc.'s Opposition to Defendant College of Santa Fe's Motion to Compel.  See Doc. 124.  Radian Asset contends that, as it did with former counsel, it is working with CSF's new counsel in good faith and believes it is fully complying with its discovery obligations.  Where appropriate, in its opinion, Radian Asset has agreed to provide additional information and supplementation.  Where, in Radian

Asset's opinion, CSF's demands are excessive and inappropriate, Radian Asset has opposed its requests.  Radian Asset represents that, throughout, it has remained mindful of the Court's guidance during the September 24, 2010 discovery hearing and has attempted to follow that guidance in its responses and incorporated some of the Court's comments in its responses.  Radian Asset argues that no supplementation is necessary to its responses to Requests for Admissions and Requests for Production.

        a.      **Interrogatory Nos. 1 and 2.**

Radian Asset has proposed a resolution.  Guided by the Court's comments, Radian Asset has agreed to re-format its response.   Radian Asset proposed supplementing its responses to Interrogatory Nos. 1 and 2 on or before October 11 to: (i) provide the information regarding omissions, as well as misrepresentations; (ii) state each misrepresentation and omission separately; (iii) for each, list separately who made the misrepresentation, when it was made, and who at Radian Asset heard and relied on it; and (iv) if the alleged omissions or misrepresentation occurred in a document, to identify that document.  Radian Asset attached its proposed supplemental responses to Interrogatory Nos. 1 and 2 as Exhibits A and B to the accompanying Declaration of Mr. Skok.  Radian Asset then responded to CSF's arguments.  The proposed supplemental responses were partly in a narrative format.  Radian Asset also agreed to identify documents in which the misrepresentations and omissions occurred.

        b.      **Interrogatory Nos. 3, 4 and 14.**

Radian Asset proposes supplementing its responses to Interrogatory Nos. 3, 4 and 14 on or before October 11 to provide additional information regarding its underwriting and decision to issue its bond and swap insurance policies, including: (a) additional detail about the steps taken; (b) the

-13-

documents reviewed; and (c) the participants involved.  Radian Asset attached its proposed supplemental responses to Interrogatory Nos. 3, 4 and 14 as Exhibits C, D and E to the accompanying Skok Declaration.

        c.      **Interrogatory No. 10.**

Radian Asset asserts that no substantive supplementation is necessary to its response to Interrogatory No. 10, but proposes supplementing its answer to clarify its answer in light of the additional detail provided in response to Interrogatory Nos. 1 and 2.  Radian Asset attached its proposed supplemental responses to Interrogatory No. 10 as Exhibit G to the accompanying Skok Declaration.

        d.      **Interrogatory Nos. 11 and 12.**

Radian Asset proposes producing copies of its general underwriting criteria for higher education deals that may have been used by its public finance department.  It asserts that no substantive supplementation of its answers to Interrogatory Nos. 11 and 12 is necessary, except to conform to this proposal.  CSF agrees that Radian Asset's proposal moots its motion on this point.

        e.      **Interrogatory No. 16.**

Radian Asset proposes to provide additional explanation and document references regarding statements about its rating.  Radian Asset attached its proposed supplemental responses to Interrogatory No. 16 as Exhibit H to the accompanying Skok Declaration.

        f.      **Interrogatory Nos. 5, 6, 8, 13, 15, 18, 19, 20, and 21.**

Radian Asset argues that no supplementation is necessary to its responses to Interrogatories Nos. 5, 6, 8, 13, 15, 18, 19, 20, and 21.  Upon summarizing its previous answers, Radian Asset asserts that those answers are complete and fully respond to CSF's Interrogatories.  Radian Asset

supplemented its answer to Interrogatory No. 9.  Radian Asset asserts that it will supplement its response to Interrogatory No. 18 to clarify that its response to Interrogatory No.9 describes additional communications.  CSF accepts Radian Asset's supplemented answer to Interrogatory No. 9.

Radian Asset also asserts that Interrogatory Nos. 20 and 21 impermissibly request Radian Asset to prematurely disclose its trial witnesses and exhibits, which Radian Asset argues it should be required to do only in accordance with the Court's scheduling order.  On October 4, 2010, CSF filed the College of Christian Brothers of New Mexico's Reply Brief in Support of Motion to Compel [Doc. No. 137]("Reply").  See Doc. 150.  CSF withdraws its objections to Interrogatory Nos. 19, 20, and 21.

<u>ANALYSIS</u>

The Court concludes that, overall, Radian Asset has responded to discovery with diligence, completeness, and good faith.  In preparing its response to the Motion to Compel, Radian Asset was mindful of the Court's guidance at the September 24, 2010 discovery hearing.  Nonetheless, the Court orders Radian Asset to amend some of its responses.

I.   **THE COURT BELIEVES THAT THE PARTIES HAVE HAD ADEQUATE OPPORTUNITIES TO MEET AND CONFER, AND TO RESOLVE THEIR DIFFERENCES.**

CSF argues that Radian Asset's suggestion that it could meet and confer further is "farcical," and is advanced for strategic reasons and delay.  CSF maintains that Radian Asset's ultimate goal of depriving CSF necessary information is being accomplished, because CSF remains without the responsive information it needs to amend its pleadings by the October 15, 2010 deadline.

Radian Asset contends that its attempts to work through the discovery issues raised in CSF's

Motion to Compel were not successful; its suggestions and invitation to meet and confer were rebuffed.  The issues are joined.  The Court finds CSF appropriately filed this Motion to Compel.

## II.     THE COURT HAS SET AN EXPEDITED BRIEFING SCHEDULE SO THAT THE COURT CAN EXPEDITIOUSLY RULE ON THE MOTION TO COMPEL.

CSF maintains that Radian Asset's objections to, and failures to provide full and complete responses to its discovery requests have materially impeded its ability to understand Radian Asset's claims in the FAC, to prepare an adequate defense, and to understand the facts more fully to determine whether an amended answer and additional defenses and counterclaims may be justified or required.  The Court previously ordered the deadline for amendments to the pleadings extended until October 15, 2010, and an expedited briefing schedule on CSF's Motion to Compel.  See Memorandum Opinion and Order, filed October 2, 2010 (Doc. 148).

## III.    THE COURT WILL COMPEL RADIAN ASSET TO PROVIDE FULL AND COMPLETE ANSWERS TO INTERROGATORY NOS. 1-6, 8-9, AND 13-18.

CSF maintains that Radian Asset's discovery responses are inadequate and nonresponsive. Moreover, CSF contends that Radian Asset not only responded inadequately, but not at all to many of the requests.  CSF asserts that Radian Asset has "evasively" answered some interrogatories, and that its Responses to Request for Admissions and to the Requests for Production are materially deficient.  The Court orders Radian Asset to supplement some of its Responses to Interrogatories.

### A.     INTERROGATORY NOS. 1 AND 2.

CSF contends that, to avoid discovery disclosure, Radian Asset chose to ignore its own characterization of its Fourth Claim for Relief as being one for "misrepresentation" that includes "misrepresentations," "failures to disclose," and "omissions."  FAC ¶¶ 8.2-8.4, at 37.  CSF argues that Radian Asset's distinction in its answer is an intentionally obstructive objection and limitation.

CSF accuses Radian Asset of acting in bad faith for not providing information regarding alleged omissions -- as opposed to misrepresentations -- in its responses to Interrogatory Nos. 1 and 2, arguing that both omissions and misrepresentations are actionable under Radian Asset's negligent misrepresentation claim.

Radian Asset maintains that CSF's interrogatories specified that the interrogatories were directed to Radian Asset's negligent-misrepresentation claim and that nothing in the interrogatories states that the CSF is also seeking information regarding omissions. Radian Asset contends that, as a matter of securities law, misrepresentations and omissions are two very distinct concepts. While Radian Asset suggests there are a number of cases that support its contention, it cites only Simpson v. Speciality Retail Concepts, 823 F. Supp. 353 (M.D.N.C. 1993), which states that, under the securities law, "there is a clear distinction between an allegation of material misrepresentation versus an omission. The first involves an affirmative act of representing, although incorrectly, while the latter involves no act or representation at all." 823 F. Supp. at 356 n.7. Radian Asset contends that CSF's interrogatory expressly asks only about "misrepresentations," and Radian Asset was entirely up front in explaining that it was providing only the information it believed the interrogatory requested.

While the Court is not prepared to say that Radian Asset acted in bad faith in making this distinction, Radian Asset is wrong. Radian Asset pled in the Fourth Claim that the actionable "misrepresentation" for which it seeks relief includes "misrepresentations," "failures to disclose," "and omissions." FAC ¶¶ 8.2-8.4, at 37.

Radian Asset maintains that, as a practical matter, there was no prejudice to CSF, because Radian Asset's response to Interrogatory No. 10 listed the alleged omissions. Looking at the list of

omissions in Radian Asset's Answer to Interrogatory No. 10 would not cure the defect, however, because the Answer to Interrogatory No. 10 does not enumerate omissions, nor provide the other information that Interrogatory Nos. 1 and 2 request about "stating all facts." The solution that Radian Asset's counsel suggests is not adequate.

Radian Asset's answer does not include all of the requested information. While Radian Asset did not separately identify each fact and provide the requested detail as to each material misrepresentation, it nonetheless provided a lengthy four-page narrative answer. While CSF complains the answer is non-responsive and leaves CSF with little more information than it had before Radian Asset answered, some of the answer is responsive, and the answer is informative.

CSF also criticized the form of Radian Asset's responses, arguing that they were not presented in a clear format. CSF further complains that the answer is "run-on, obfuscating," Motion to Compel at 5, and while the Court cannot find the structure of the answer to be in bad faith, it could be clearer and more helpful. Radian Asset contends that the federal rules do not impose on Radian Asset the burden of agreeing or disagreeing with CSF's charting or re-casting of Radian Asset's discovery responses into trial exhibits, as Radian Asset asserts that CSF was attempting to force Radian Asset to do in its September 21, 2010 letter. In any case, Radian Asset argues, there is no need to order Radian Asset to re-format its answers, because it has agreed to supplement in a separately explained format.

CSF cannot complain too much about the length of Radian Asset's responses, because the length is a product of the fact that the interrogatories are very broad in their inquiry, and, according to Radian Asset, the misrepresentations and omissions were extensive. While Radian Asset may not have intended their paragraphs to be run-on answers, they are, in the end, vague. Moreover, Radian

Asset's answers, in most respects, in addition to not identifying the specific misrepresentations that it contends were made, do not identify the person making the alleged misrepresentation, do not identify the date or dates when the alleged misrepresentations were made to Radian Asset, and do not identify specific persons on behalf of Radian Asset who heard, read, or relied on the misrepresentation.  Whether run-on or just a narrative, it is difficult to glean the necessary information from the answers.

The Court concludes that Radian Asset never specifically identified misrepresentations "separately and in detail" in its answers.  Responses Nos. 1, 2, at 6, 10.  Accordingly, the Court will compel Radian Asset to fully answer Interrogatory Nos. 1 and 2, including without limitation, as to the "failures to disclose" and "omissions" that Radian Asset characterizes in its Fourth Claim constitute part of its claim for "misrepresentation."  FAC ¶¶ 8.3-8.4, at 37.

While CSF contends that it created Exhibits A and B to deflect Radian Asset's attempt to make its answers unusable, and that Radian Asset is trying to obscure its answers, the Court is not convinced that Radian Asset's structure is made for ill purposes.  Cf. Mr. Baker's Letter at 2-3.

CSF has made a good faith effort to parse out the misrepresentations with Exhibits A and B. While CSF contends that Radian Asset's refusal to "edit or confirm or deny" CSF's Exhibits A and B demonstrates Radian Asset's less than good-faith participation in the discovery process, Mr. Baker's Letter at 4, the Court need not go so far as to impute bad faith to Radian Asset.  On the other hand, it appears that Radian Asset has passed up an opportunity to confirm that CSF correctly has parsed the answer and identified each misrepresentation.

CSF wants Radian Asset to do more than identify the documents in which the misrepresentations and omissions occurred, and demands that Radian Asset identify by Bates

number any document in any way "pertaining, relating or referring to" the misrepresentation or omission.  Radian Asset maintains that the requested information is a massive universe that would impose a significant burden on Radian Asset, with little practical value to CSF.  Radian Asset maintains that the non-privileged documents within Radian Asset's possession that contain or relate to the misrepresentations/omissions are already within CSF's possession.

Radian Asset is not relying solely on a rule 33(d) response -- i.e., a reference to its business records -- and has instead identified the misrepresentation or omission, and provided other information.  Radian Asset maintains that there is no need to also require it to identify every document that refers or relates to the misrepresentations or omissions in any way.  Radian Asset contends that the broad misrepresentations and omissions made by CSF ensure that almost every document in Radian Asset's underwriting files for the Bonds and Swap would pertain or relate to the misrepresentations or omissions in some way.

CSF needs to defend itself.  Accordingly, the Court will enter its order requiring Radian Asset to fully respond to Interrogatory Nos. 1 and 2 in all respects, including responding with information about omissions.  The Court orders Radian Asset to use the format that CSF suggested. Radian Asset will list in numerical order the bases on which it alleges misrepresentations, failures to disclose, and omissions -- collectively referred to as misrepresentations.  Radian Asset must be specific, and each instance must be separate -- not in narrative form.[1]  For each numbered item, Radian Asset will state: (a) who made the misrepresentation; (b) who received it; (c) who relied upon it; (d) when Radian Asset received the misrepresentation; and (e) the bates number of any document that Radian Asset will contend at trial contains the misrepresentation -- either through an

---

[1] The Court admonishes Radian Asset to be specific in order to preserve issues for trial.

-20-

affirmative misrepresentation or where Radian Asset will contend a statement was omitted from a document which reasonably should have contained the statement -- but not documents that merely pertain or relate to the misrepresentation.[2]

###    B.    INTERROGATORY NOS. 3, 4, AND 14.

Radian Asset's position in this suit, boiled down to its essence, is that CSF duped it into issuing Bond and Swap insurance it otherwise would not have issued by misrepresenting, failing to disclose, and omitting disclosure of material facts. These allegations come to focus throughout the FAC, but are specifically advanced in the FAC's Fourth Claim for Relief. Radian Asset's answers to Interrogatory Nos. 3 and 4 do not specifically identify what Radian Asset did in satisfying its due diligence duty, if anything. For example, Interrogatory Nos. 3 and 4 require Radian Asset to include a description of comparisons made of prior years' projections to audit results, review of cash flows, and the attempts Radian Asset made to determine what effect the early retirement program had, but Radian Asset does not respond with facts about any of those subjects. Radian Asset does not identify what public information or rating agency reports it reviewed, does not identify any person's notes reflecting any such review or due diligence, and does not identify any document that was requested "as appropriate" follow-up information. Radian Asset's answer to Interrogatory No. 4 also indicates that a number of documents relating to due diligence "were received," but does not state whether anyone at Radian Asset ever looked at them, when, or who that person was.

For these reasons and the reasons stated on the record at the October 4, 2010 hearing, the Court finds the requested information relevant, and orders Radian Asset to amend its answers to Interrogatory Nos. 3 and 4. Radian Asset is ordered to numerically list each factor it considered in

---

[2] At the October 4, 2010 hearing, CSF agreed to this order.

doing it due diligence.  For each numbered item, Radian Asset will list: (a) what Radian Asset did to evaluate the factor or, if no evaluation was made, identify individuals involved in the evaluation; and (b) how, if at all, Radian Asset relied on any misrepresentation from CSF in evaluating the factor.[3]  The Court finds this supplementation addresses CSF's concerns about Interrogatory No. 14, and the Court will not order Radian Asset to provide any supplementation of Interrogatory No. 14.[4]

### C.    INTERROGATORY NO. 5.

Interrogatory No. 5 directs Radian Asset to "state all facts concerning what reliance, if any, Radian placed on any 'budget comparison to actual' reports prepared by Sharon Bain," including particular details.  Responses No. 5, at 18.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 5.  Radian Asset shall: (i) numerically identify each budget comparison to actual report Radian Asset received; and (ii) for each report it received, state: (a) whether Radian Asset relied upon the report; (b) whether Radian Asset did anything further to verify the information in the report; and (c) briefly state whether Radian Asset accepted the information as true, questioned the information, or rejected the information.

### D.    INTERROGATORY NO. 6.

Interrogatory No. 6 directs Radian Asset to "set forth in complete factual detail the value Radian placed on the assets that were to secure the Bond indebtedness at the time of the issuance of the commitment letter and at all times thereafter," and related documents for each such valuation. Responses No. 6, at 20.  For reasons stated on the record at the October 4, 2010 hearing, the Court

---

[3] At the October 4, 2010 hearing, CSF agreed to this order.

[4] At the October 4, 2010 hearing, CSF agreed to this order.

orders that Radian Asset supplement its answer to Interrogatory No. 6.  Radian Asset shall: (i) state whether it placed a value on any of the College's assets; and (ii) if so, list the assets on which Radian Asset placed a value, and for each item, state: (a) what value Radian Asset assigned the asset; and (b) when the value was assigned.[5]

### E.    INTERROGATORY NO. 8.

Interrogatory No. 8 directs Radian Asset to "state all facts, separately and in detail as to what [Radian Asset] contend[s] each breach of contract was," including specific information about each alleged breach.  Responses No. 8, at 22.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 8.  Radian Asset shall: (i) identify each category -- but not the amount -- of damage Radian Asset alleges resulted from the breach of contract, including the contractual indemnity claim, and for each: (a) explain what is the damage; (b) identify each document that Radian Asset believes supports that specific damages claim; and (c) identify the witness who will have knowledge to testify at trial about that specific damages claim.[6]

### F.    INTERROGATORY NO. 10.

Interrogatory No. 10 directs Radian Asset to "state all facts separately and in detail as to what [Radian Asset] contend[s] each Securities Act violation allegedly engaged in by each defendant (separately) was," and to provide particular information for each.  Responses No. 10, at 26.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 10.  Radian Asset shall numerically list each Securities

---

[5] At the October 4, 2010 hearing, CSF agreed to this order.

[6] At the October 4, 2010 hearing, both Radian Asset and CSF agreed to this order.

Act violation for which Radian Asset alleges each Defendant is liable, and for each securities violation: (a) state the date when the Securities Act violation occurred; (b) if the Securities Act violation was a misrepresentation or omission, state who at Radian Asset relied on the misrepresentation or omission; and (c) identify any document in which Radian Asset alleges violations of the Securities Act were made, either when the document makes an affirmative misrepresentation or where the document omits a statement which it reasonably should have contained.[7]

### G.    INTERROGATORY NOS. 11 THROUGH 21.

Radian Asset's contention regarding the number of interrogatories is incorrect, and the Court will not accept its counting.  "[A]n interrogatory is to be counted as but a single question for purpose of [our local rule], even though it may call for an answer containing several separate bits of information, if there is a direct relationship between the various bits of information called for." Clark v. Burlington Northern R.R., 112 F.R.D. 117, 120 (N.D. Miss. 1986).  While parties cannot evade the presumptive limitation on the permitted number of interrogatories through the device of joining as "subparts" questions that seek information about discrete subjects, a question asking about details of a single subject should be treated as a single interrogatory, even though the interrogatory requests that the time, place, persons present, and contents be stated separately for each such communication.

> When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for protective order.  The responding party should not answer some interrogatories and object to the ones to which it does not want to respond.  By answering some and not answering others, the Defendants waived this objection.

---

[7] At the October 4, 2010 hearing, both parties agreed to this order.

Allahverdi v. Regents of the Univ. of N.M., 228 F.R.D. 696, 698 (D.N.M. 2005)(Browning, J.).  The Court orders Radian Asset to answer all of the interrogatories.

### H.  INTERROGATORY NOS. 11 and 12.

Interrogatory Nos. 11 and 12 seek information about other educational institutions Radian Asset insured between 2002 and 2007, and between 2002 and 2009 respectively.  Radian Asset contends that the production of information about all the educational institutions for which it did work during these periods would create a substantial burden.  At the October 4, 2010 hearing, CSF stated that it accepts the answers Radian Asset provided.  Because the parties now agree, the Court denies CSF's Motion on Interrogatory Nos. 11 and 12.

### I.  INTERROGATORY NO. 13.

Interrogatory No. 13 directs Radian Asset to "explain in complete detail each fact that indicates that the FY2006 actual financial results of the College of Santa Fe (as opposed to any budget or projection) made the College of Santa Fe 'unlikely to make all required payments,'" and to identify related witnesses and documents.  Responses No. 13, at 32.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 13.  Radian Asset shall state whether it contends CSF believed CSF was unlikely to make all required payments on the bonds at the time that the insurance was purchased.  If Radian Asset contends CSF believed CSF was unlikely to make all required payments, then Radian Asset shall identify each witness whom Radian Asset contends came to that conclusion and each document on which it bases that conclusion.[8]

_____

[8] At the October 4, 2010 hearing, Radian Asset and CSF agreed to this order.

-25-

### J.       INTERROGATORY NO. 15.

Interrogatory No. 15 directs Radian Asset to "state all facts as to what each item of damages

[Radian Asset] [is] seeking in this case," and to provide particular information for each.  Responses

No. 15, at 33.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that

Radian Asset supplement its answer to Interrogatory No. 15.  Radian Asset shall (i) describe each

category of damages in detail; (ii) state the amount for damages in each category; (iii) state how each

amount was calculated; (iv) disclose the elements or components of each, including the amounts for

any attorney fees and costs -- such as a billing statement providing the monthly total due without

further itemization at this time; (v) identify the witness or witnesses who will have knowledge to

testify at trial about that specific damages claim; and (vi) identify each document that Radian Asset

believes supports a specific damages claim.  The Court orders Radian Asset to disclose detailed time

sheets on January 31, 2011,[9] and they may be redacted to preserve attorney-client privilege or work-

product protection.[10]

---

[9] The Court initially set the deadline of December 1, 2010, for disclosing time sheets or billing statements.  The Court extended this deadline in its Memorandum Opinion and Order, filed November 3, 2010.

[10] At the hearing, Radian Asset expressed concerns that disclosing its time sheets would either reveal privileged or protected information, or require Radian Asset to spend substantial time reworking its time sheets to remove the privileged and protected information. Radian Asset further argued that the time sheets would reveal no useful information.  The Court is sympathetic to Radian Asset's concerns, but the information is relevant, and the Court sees no other route to providing the information to CSF.  Radian Asset has brought claims for which one of the elements of damages is attorney fees; Radian Asset must prove the amount to the factfinder, and not wait to ask for them after the case is concluded.  The Court remains open to other options if Radian Asset can propose an alternative that provides the necessary information to CSF without creating a burden on the ability of Radian Asset's counsel to communicate with their client.

-26-

### K.      INTERROGATORY NO. 16.

Interrogatory No. 16 directs Radian Asset to "state all facts as to what each disclosure was that Radian made to College of Santa Fe concerning the financial condition, or its ratings, of Radian," and to provide particular information for each.  Responses No. 16, at 34.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 16.  Radian Asset shall: (i) separate its disclosures about Radian Asset's financial condition and disclosures about Radian Asset's financial strength rating into two categories; (ii) in each category, Radian Asset shall list all relevant disclosures -- with disclosures that involve both categories listed twice, once in each category -- stating: (a) the date the disclosure was made; (b) how the disclosure was made; (c) the identity of witnesses making the disclosure; and (d) documents that Radian Asset is going to use to show that Radian Asset made the disclosure; and (iii) for each of the two categories of disclosures, Radian Asset will provide a narrative paragraph stating what knowledge Radian Asset had as to what effect the deterioration of that category would have on the transaction.

### L.      INTERROGATORY NO. 17.

Interrogatory No. 17 directs Radian Asset to "state all facts as to what deterioration and/or reversal of Radian's financial/insurer condition occurred after October 1, 2005, up (through September 16, 2009) that affected College of Santa Fe's counter-party risk or that otherwise had any adverse financial impact on College of Santa Fe," and to provide particular information for each. Responses No. 17, at 35.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 17.  Radian Asset shall: (i) separate its answer into two categories -- factors relating to Radian Asset's financial condition and

factors relating to Radian Asset's financial strength rating; (ii) in each category, Radian Asset shall list factors that occurred between October 1, 2005, and September 16, 2009, that affected CSF's counter-party risk or that otherwise had any adverse financial impact on CSF; (iii) for each factor, Radian Asset shall state: (a) the impact the deterioration had on CSF for this issuance; (b) the date the factor occurred; (c) briefly state what caused the factor; (c) the identity of witnesses with knowledge who can testify at trial; and (d) documents that can be used to show that the factor existed or its impact.[11]

### M.    INTERROGATORY NO. 18.

Interrogatory No. 18 directs Radian Asset to "state each and every reason Radian had and each factor Radian analyzed for agreeing to the 'Mutual Release of Claims' between RBC Capital Markets Corporation, Royal Bank of Canada and Radian," and to provide particular information for each.  Responses No. 18, at 36.  For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset supplement its answer to Interrogatory No. 18.  Radian Asset shall: (i) numerically list each factor it analyzed in deciding to agree to the "Mutual Release of Claims" between RBC Capital Markets Corporation, Royal Bank of Canada and Radian Asset -- including each claim Radian Asset thought each party had against the other parties; for each factor, Radian Asset shall: (a) identify each document that contains information about Radian Asset's consideration of the factor; and (b) identify witnesses that will have knowledge to testify at trial about that factor; and (ii) Radian Asset shall state whether it has listed all of the factors it considered, or if other factors were considered, but are covered by attorney-client privilege or work product protection.[12]

---

[11] At the October 4, 2010 hearing, the CSF agreed to this order.

[12] At the October 4, 2010 hearing, the CSF agreed to this order.

## IV.   THE COURT WILL COMPEL RADIAN ASSET TO AMEND SOME OF ITS ANSWERS TO CSF'S REQUEST FOR ADMISSIONS.

The Court orders Radian Asset to amend its responses to CSF's Request for Admissions Nos. 15, 16, 18, and 21.   CSF asks that Radian Asset set down in detail the reasonable inquiry Radian Asset performed in response to CSF's Request for Admissions Nos. 14, 15, 16, 18, and 21.   For reasons stated on the record at the October 4, 2010 hearing, the Court orders that Radian Asset amend its response to CSF's Request for Admission Nos. 15, 16, 18, and 21.   Radian Asset shall state its answer in accordance with rule 36(a)(4); Radian Asset must admit or deny each item, "or state in detail why the answering party cannot truthfully admit or deny it."   Fed. R. Civ. P. 36(a)(4). Radian Asset "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."   Fed. R. Civ. P. 36(a)(4).

Radian Asset need not explain the reasonable inquiry it performed if it is unable to admit or deny an item for lack of knowledge or information.   Rule 36(a)(4) states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.   A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.   The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4)(emphasis added).   There is arguably a tension between the first sentence of rule 36(a)(4) and the third sentence.   The first sentence suggests that the answer must describe in detail what efforts have been made to answer the request for admission; the third sentence suggests that such detail is not necessary and that the answer need only track the third sentence of 36(a)(4).

-29-

There thus may be some conflict between rule 36(a)(4)'s requirement that a responding party "state in detail why the answering party cannot truthfully admit or deny" a request for admission, and not requiring a responding party to detail the "reasonable inquiry" the party made.  The courts have split on this issue.  Some district courts have asserted a party must detail its inquiry.  See, e.g., A. Farber & Partners, Inc. v. Garber, 237 F.R.D. 250, 254 (C.D. Cal. 2006); Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 78 (N.D.N.Y. 2003)("Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts." (citation omitted)).  Other courts have asserted, however, that a simple statement that a party has made a reasonable inquiry and does not have adequate information to admit or to deny a request for admission may suffice, and a party may rest on the statement.  See, e.g., Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242 (9th Cir. 1981); Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107, 349 F. Supp. 436 (E.D. Pa. 1972)("Under the amended Rule 36, it would appear that a mere statement in the answer that the answering party has made reasonable inquiry and that the information solicited was insufficient to enable him to admit or deny the requested matter will suffice.").  The Court believes the latter authorities have the better argument and adopts this view.

In Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242 (9th Cir. 1981), the United States Court of Appeals for the Ninth Circuit addressed the adequacy of a response to a request for admission where the answering party -- the railroads -- stated: "Answering party cannot admit or deny.  Said party has made reasonable inquiry.  Information known or readily obtainable to this date is not complete.  Investigation continues."  669 F.2d at 1244.  The district court held a

hearing whether to treat the railroads' response as an admission.  The court asked the railroads whether they had "subsequently come into more information that (would) enable (them) to supply more appropriate answers."  669 F.2d at 1245.  The railroads answered: "We may possibly, Your Honor," but insisted that "the answers still stand."  669 F.2d at 1245.  The district court ordered the matters admitted.

The railroads appealed, arguing, in part, that their responses to the request for admissions satisfied rule 36(a)'s requirements.  The Ninth Circuit held that it was within the district court's discretion to order the matter admitted.  See 669 F.2d at 1245.  The Ninth Circuit, after noting that rule 36 provides that a matter may be deemed admitted if the answer does not comply with the rules, stated:

> It is undisputed that failure to answer or object to a proper request for admission is itself an admission: the Rule itself so states.  It is also clear that an evasive denial, one that does not "specifically deny the matter," or a response that does not set forth "in detail" the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission.  Since such a response does not comply with the literal requirements of Rule 36(a), the district court may, in its discretion, deem the matter admitted.  The railroads, however, argue that an answer complies with the requirements of Rule 36(a) if it states that the party has insufficient information to admit or deny the matter and that the party has made reasonable inquiry into all readily obtainable information.

> The language of Rule 36(a) would indeed permit such a construction.  The Rule provides that a party may not give lack of information as a reason for failure to admit or deny "unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny" (emphasis added).  The railroads cite in support of this construction Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107, 349 F. Supp. 436 (E.D. Pa.1972), where the district court observed that "it would appear that a mere statement in the answer that the answering party has made reasonable inquiry and that the information solicited was insufficient to enable him to admit or deny the requested matter will suffice."  Id. at 451-52 (footnote omitted). Their position is further supported by the Advisory Committee's Note, which states:

> > The revised rule requires only that the answering party make reasonable

> inquiry and secure such knowledge and information as are readily obtainable
> by him.  In most instances, the investigation will be necessary either to his
> own case or to preparation for rebuttal.  Even when it is not, the information
> may be close enough at hand to be "readily obtainable."  Rule 36 requires
> only that the party state that he has taken these steps. . . . .
>
> We have not been cited to, nor has our review uncovered, any case holding
> that a response which includes the statement required by Rule 36(a) may nonetheless
> be deemed an admission.

669 F.2d at 1245-46 (citations omitted).  Nonetheless, the Ninth Circuit found itself unpersuaded

"that an answer to a request for admission necessarily complies with Rule 36(a) merely because it

includes a statement that the party has made reasonable inquiry and that the information necessary

to admit or deny the matter is not readily obtainable by him."  669 F.2d at 1246 (emphasis added).

Noting the well-documented abuses of the discovery rules, the Ninth Circuit reasoned that

"permitting a party to avoid admitting or denying a proper request for admission simply by tracking

the language of Rule 36(a) would encourage additional abuse of the discovery process."  669 F.2d

at 1246.  Based on this concern about discovery abuse, the Ninth Circuit stated: "[R]estricting the

district court's discretion in this manner would reduce a litigant's obligation to make 'reasonable

inquiry' into a mere semantic exercise, and thus severely undermine the policy embodied in Rule

36(a) of limiting the issues before trial."  669 F.2d at 1246-47.  The Ninth Circuit held:

> [A] response which fails to admit or deny a proper request for admission does not
> comply with the requirements of Rule 36(a) if the answering party has not, in fact,
> made "reasonable inquiry," or if information "readily obtainable" is sufficient to
> enable him to admit or deny the matter.  A party requesting an admission may, if he
> feels these requirements have not been met, move to determine the sufficiency of the
> answer, to compel a proper response, or to have the matter ordered admitted.
> Although the district court should ordinarily first order an amended answer, and
> deem the matter admitted only if a sufficient answer is not timely filed, this
> determination, like most involved in the oversight of discovery, is left to the sound
> discretion of the district judge.  See David v. Hooker, Ltd., 560 F.2d 412, 418-19
> (9th Cir. 1977); French v. United States, 416 F.2d 1149, 1152 (9th Cir. 1969). The
> general power of the district court to control the discovery process allows for the

severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a).

669 F.2d at 1247.

The Court agrees with the Ninth Circuit that the language of rule 36(a)(4) permits a construction that tracking the third sentence of 36(a)(4) -- stating that a party has made a reasonable inquiry -- is enough and that no more detail about the inquiry is necessary. The Court further concludes, however, that the construction is not only permissible, but the better construction. Rule 36(a)(4) was added to require more detail. See Fed. R. Civ. P. 36(a) advisory committee's notes ("A problem peculiar to Rule 36 arises if the responding party serves answers that are not in conformity with the requirements of the rule -- for example, a denial is not 'specific,' or the explanation of inability to admit or deny is not 'in detail.'"). The Respondent must, if he or she cannot admit or deny, state in detail why not.

One of the more common situations is when a respondent can only admit a portion of the report. The second sentence of rule 36(a)(4) states what a respondent must do. See Fed. R. Civ. P. 36(a)(4)("A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.") Another common situation is where the respondent lacks adequate knowledge to answer. The third sentence tells the respondent what he or she must do to answer "in detail." In other words, the sentence sets forth what "in detail" means for the common situation when the answering party lacks information or knowledge. There may be other situations where a respondent cannot admit or deny; in such a situation, the respondent must use the more general directions in the first sentence. If the Court were to interpret rule 34(a)(4) as requiring a

person who lacked knowledge to make the statements in the third sentence <u>and</u> describe in detail the inquiry, there would be little need to even have the third sentence -- rendering it effectively surplusage, a disfavored result.  <u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 669 (2007)("On the dissent's reading, [some statutory language] is mere surplusage, and we have cautioned against reading a text in a way that makes part of it redundant."  (citing <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001)).  "In detail" would require at least setting forth what the third sentence requires.  The Court is reluctant to give rule 36(a)(4) a construction that gives the third sentence little, if any, effect.  Further, the plain language of the first sentence of rule 36(a)(4) does not state that the answer must describe "in detail" the inquiry made; the first sentence states that the respondent must "state in detail <u>why</u> the answering party cannot truthfully admit or deny it" -- not <u>what</u> the answering party has done.  Fed. R. Civ. P. 36(a)(4)(emphasis added).  To add the requirement that the answering party must describe in detail what the party has done to reasonably inquire is to write into the rule language that is not there.  The Court is reluctant to read into the rule a requirement that Congress did not write.

There is also a policy rationale for not reading the "in detail" requirement into the subject that the third sentence covers.  Rule 36 deals with requests for admissions and not with interrogatories.  To require the answering party to describe in detail the efforts it has made to inquire would be to turn the request for admissions into an open-ended interrogatory.  Moreover, an in-detail description of the inquiry does not advance the discovery ball much; such an answer still does not produce an admission or denial.  The detail is not much use for discovery.  The detail is more useful for after trial to determine whether rule 37(a)(5) expenses should be awarded for failure to admit, but requiring that information now pushes to an early part of the case a lot of work and squabbles

that may never need to be addressed if the case settles or the issue proves to be irrelevant down the road. Requests for admissions are rarely useful in twenty-first century complex commercial litigation, and are mostly helpful to authenticating documents or getting the most basic factual stipulations. Requests for admissions are useful when there is an admission, but not very useful when there is not a clear admission. The third sentence is made under rule 11, which is probably the best end to request-for-admission disputes; to read a requirement that the answering party describe in detail the reasonable inquiry only promotes satellite litigation with little benefit.

Even if the Court were not to adopt a bright-line rule eschewing a detailed statement of the inquiry demanded by the first sentence in rule 36(a)(4), under the federal rules, the Ninth Circuit suggests, it is within a court's discretion to order a response admitted; under such a principle, it is also within the court's discretion not to do so. Accordingly, under the Ninth Circuit rule, it may be within the Court's discretion to decide whether Radian Asset may simply state that it has performed a reasonable inquiry or whether Radian Asset must detail its efforts. While the Court believes rule 36(a)(4) does not require the reasonable inquiry to be described "in detail," the Court also finds that the circumstances do not demand additional information, and Radian Asset meets the requirement that it "state in detail why [Radian Asset] cannot truthfully admit or deny" the Request for Admissions by stating that it "made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). In particular, CSF's Request for Admissions Nos. 15, 16, 18, and 21 do not specify particular actors, and request broad -- and at times vague -- admissions. The Court also denies CSF's motion to have Radian Asset amend its response to Request for Admission No. 14, because the request is compound and argumentative.

-35-

V.    **THE COURT ORDERS RADIAN ASSET TO AMEND ITS RESPONSES TO CSF'S REQUESTS FOR PRODUCTION IN ACCORDANCE WITH ITS RULINGS ON SUPPLEMENTING ITS ANSWERS TO INTERROGATORIES.**

In light of the Court's order regarding supplementing Radian Asset's answers to the Interrogatories, to the extent the Court orders Radian Asset to produce information to supplement its answers to Interrogatories, Radian Asset's objections to the Requests for Production are overruled.  Any objections Radian Asset makes to CSF's Requests for Production that are not addressed by the Court's directions on supplementing its answers to interrogatories are not overruled.  Radian Asset is ordered to produce any documents necessary to comply with the Court's order, or a letter stating that all responsive documents have been produced.[13]

**IT IS ORDERED** that: (i) Defendant College of Santa Fe's First Motion to Compel Plaintiff Radian Asset Assurance, Inc. to Provide Good Faith and Complete Responses to College of Santa Fe's August 18, 2010 Interrogatories, Requests for Admission, and Requests for Production, and Request for Other Relief, and Memorandum Brief in Support Thereof, filed September 23, 2010 (Doc. 137), is granted in part and denied in part; (ii) Radian Asset shall supplement its responses to the Interrogatories, Request for Admissions, and Requests for Production in accordance with this Order by October 14, 2010; (iii) the Court will amend its Memorandum Opinion and Order, filed October 2, 2010 (Doc. 148), to extend to October 25, 2010, the deadline for: (a) Riddell Williams, P.S., to produce or privilege log all its files related to the workout, bond, and sale of the College of Santa Fe up to the filing of date of the Complaint, filed September 14, 2009 (Doc. 1), or inform the College if it has already done so; and (b) for Gavin Skok and Riddell Williams to produce or privilege log all files related to any grey matters that may exist during the time before the filing

---

[13] At the October 4, 2010 hearing, the CSF agreed to this order.

when he may have been marginally involved in the bond or sale; and (iv) the parties and Court will

meet for a status conference at 9:00 a.m. on October 18, 2010.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Daniel J. O'Friel
Pierre Levy
Aimee Sue Bevan
O'Friel and Levy
Santa Fe, New Mexico

-- and --

Jeffrey R. Brannen
Jeffrey R. Brannen, P.A.
Santa Fe, New Mexico

-- and --

Gavin W. Skok
John D. Lowery
Riddell Williams, P.S.
Seattle, Washington

      *Attorneys for the Plaintiff*

Clifford K. Atkinson
Douglas A. Baker
Justin Duke Rodriguez
Atkinson, Thal & Baker, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant College of the Christian Brothers of New Mexico and*
        *Christian Brothers of the College of Santa Fe*

-37-

W. Spencer Reid
Benjamin F. Feuchter
Keleher & McLeod, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Sharon Bain*

Joe L. McClaugherty
Tamara R. Safarik
McClaugherty & Silver, P.C.
Santa Fe, New Mexico

     *Attorneys for Defendant Jerry Brisson*

Michael W. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

     *Attorneys for Defendant Mark Lombardi*